**In re Helen COSTELLO, Debtor.**

**Bankruptcy No. 93–229–8P7.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

June 24, 1998.

D. Turner Matthews, Bradenton, FL, for Debtor.

V. John Brook, Jr., Trustee, St. Petersburg, FL.

Dennis J. LeVine, Tampa, FL, for Trustee.

Larry M. Foyle, Tampa, FL, for Victor Levine.

**ORDER ON REMAND OF ORDER ON
MOTION FOR SANCTIONS (Doc.
# s 265 & 416)**

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 case and the matter under consideration is an Order (Doc. # 416) remanding to this Court the Order on Motion for Sanctions (Doc. # 265) for a determination of how the $50,000.00 punitive sanction award was calculated, including: (1) whether the amount seeks to make Victor Levine whole or imposes a fine or sanctions; and (2) whether the amount is payable to Victor Levine or to the registry of the court. The facts relevant to the resolution of this controversy as they appear in the record are as follows:

Helen Costello (Debtor) began her journey in the Bankruptcy Court in the Tampa Division of the Middle District of Florida on

August 24, 1988 by filing her Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code. This Chapter 11 was dismissed on October 7, 1992 after this Debtor failed to achieve confirmation. During the pendency of the Chapter 11 case, the Debtor borrowed $250,000.00 from Victor Levine (Levine). This loan was secured by a mortgage on three parcels of real property, owned by the Debtor, located in Manatee County, Florida. The loan matured on January 31, 1991, fell into default and Levine filed a foreclosure action. On December 27, 1991, the Circuit Court entered a Final Judgment of foreclosure and ordered the properties to be sold by the clerk at a foreclosure sale. The foreclosure sale was set, however, due to the Debtor filing a new Petition for Relief on February 22, 1992, this time under Chapter 7 of the Code, the sale was canceled. On June 26, 1992, this Court granted an Amended Motion for Relief from the Automatic Stay filed by Levine. On July 2, 1992, the Debtor converted her Chapter 7 case to a Chapter 11 case. On September 16, 1992, this Court dismissed the Debtor's second case. On October 23, 1992, the Debtor filed her third Chapter 11 case but, this time she filed in the Orlando Division of the Middle District. On November 9, 1992, Levine filed an Emergency Motion and again sought relief from the automatic stay. On November 10, 1992, the Bankruptcy Court for the Middle District of Florida, Orlando Division granted Levine's Motion, annulled the automatic stay and ruled that the automatic stay would not apply to any subsequent filings by the Debtor concerning the three parcels of real estate involved in the above-described foreclosure action. Although the bankruptcy case filed in the Orlando Division was still open, on November 12, 1992, the Debtor filed her fourth bankruptcy case, in the Tampa Division under Chapter 7, just prior to the rescheduled foreclosure sale. Notwithstanding, the foreclosure sale was conducted.

On November 19, 1992, the Debtor filed an objection to the sale, in Circuit Court, contending that the sale was in violation of the automatic stay. On March 15, 1993, the Circuit Court entered an Order setting aside the sale and setting a new sale date. Prior to the entry of this Order, the Debtor filed her Motion for Sanctions against Levine and his attorney Larry Foyle for violation of the automatic stay. On December 3, 1992, Levine filed a Motion seeking an order annulling the automatic stay. On January 6, 1993, the Orlando Chapter 11 was converted to a Chapter 7 case and was transferred to the Tampa Division, where it was consolidated with the already pending Chapter 7 case filed by the Debtor on November 12, 1992.

As for the three parcels of real property, the Debtor transferred title to these on May 12, 1993 by quit claim deed to one G. Harris Gileo, who filed for relief under Chapter 13 the next day in the Northern District of Georgia, Atlanta Division. On June 1, 1993, the bankruptcy court lifted the automatic stay as to the three parcels of real property. It is clear from this record that the Debtor managed to hold on to the three parcels of real property through the use of the protection of the automatic stay in three different courts. It is also clear to this Court that the above-mentioned bankruptcy filings were merely an attempt at frustrating Levine.

In view of the foregoing, this Court sanctioned the Debtor in an amount which included $50,000.00 in punitive sanctions. The Debtor appealed this Court's Order entered October 17, 1994. (Doc. # 265). The United States District Court for the Middle District of Florida, Tampa Division affirmed the Bankruptcy Court's ruling (Doc. # 358) and the Debtor appealed to the Eleventh Circuit Court of Appeals. On appeal, the Eleventh Circuit remanded the Order to this Court for a determination of how the punitive sanctions were calculated, including: (1) whether the amount seeks to make Victor Levine whole or imposes a fine or sanctions; and (2) whether the amount is payable to Victor Levine or to the registry of the court.

Levine suggests that one fair basis for computing the punitive sanction award of $50,000.00 would be to award $10,000.00 for each of the five bankruptcy cases instituted by the Debtor for her improper purpose. In addition, Levine suggests that he was not compensated for: (1) his legal expenses incurred in connection with the case filed in

Atlanta; and (2) his travel expenses to and from England where he resides.

The difficulty with a punitive sanction is that its purpose is to punish and deter. The purpose is not to compensate. Admittedly, the line of demarcation between such is fine and certain fact situations may be blurred. In this instance, the Court is satisfied that the facts clearly warrant a punishment for the harm caused, albeit it is not readily quantifiable, to Levine for exposing him to these unwarranted and frustrating litigations. This Court must reject the suggestion that a sanction for all five bankruptcy cases would be appropriate, since the first two filings might be condoned. However, it is clear that the last three filings were inexcusable and highly improper. Thus, this Court is satisfied that a sanction of $30,-000.00, $10,000.00 per bankruptcy case, is a proper punitive sanction to punish the Debtor for filing the last three bankruptcy cases. This Court has an inherent power to impose sanctions for bad faith conduct in litigation. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). *See also Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc.*, 57 F.3d 1215 (3d Cir.1995). In this instance, the Debtor clearly acted in bad faith and this Court is satisfied that an additional punitive sanction in the amount of $10,000.00 is fair and proper.

This Court must also determine whether the punitive sanctions should be paid to Levine or to the clerk of the Court. The conduct sanctioned here caused frustration to Levine, a creditor, and it also caused a substantial amount of judicial waste. This Court is satisfied, however, that the punitive sanction should be paid to Levine and not to the Court. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) ($996,644.65 in punitive sanctions were awarded to the victimized party, not to the court).

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Order on Motion for Sanctions be, and the same is hereby, modified to the extent that the punitive sanction award is hereby reduced to $40,000.00 from $50,000.00

and this reduced amount is to be paid by Helen Costello, the Debtor, to Victor Levine.